1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

9

LESTER L. TELLIS,

10

Petitioner,

11

v.

12

BILL DONAT, et al.,

13

Respondents.

Case No. 3:10-cv-00387-MMD-VPC

ORDER

14

15     This counseled, second-amended petition for writ of habeas corpus pursuant to

16   28 U.S.C. § 2254 brought by a Nevada state prisoner is now before the Court for final

17   disposition on the merits. (Dkt. no. 39.) Respondents have answered (dkt. no. 40), and

18   petitioner replied (dkt. no. 43).

19   **I.     PROCEDURAL HISTORY AND BACKGROUND**

20     On January 18, 2008, Lester Tellis ("Tellis" or "petitioner"), who was in the

21   custody of the Nevada Department of Corrections ("NDOC") at Nevada State Prison

22   ("NSP"), received a Notice of Charges ("NOC") alleging the following violations:  MJ19 -

23   Sexual Assault; MJ25 — Threats; and MJ30 — sexually stimulating activities. (Exh. 2 at

24   2-3.)[1] Prison officials served the NOC on petitioner on January 22, 2008. (*Id*. at 3.)

25   Prison personnel conducted a disciplinary hearing on January 28, 2008, and found

26   Tellis guilty. (*Id*. at 6-9.)

27

28          [1]Exhibits 1-34 are exhibits to petitioner's first-amended petition, dkt. no. 15, and
are found at dkt. nos. 16-17.

Tellis filed a grievance challenging the findings of the disciplinary hearing. (Exh. 4.) Ultimately, NSP officials conducted a new disciplinary hearing on or about March 7, 2008. (Exh.6 at 2.) Tellis was again found guilty. (*Id.* at 9.) His sanctions included 24 months disciplinary segregation, 60 days loss of appliances, 60 days loss of canteen privileges, and a loss of 450 days of statutory credits. (Exhs. 2, 5.)

Tellis filed a state habeas petition on September 5, 2008. (Exh. 13.) The state district court dismissed the petition, finding that Tellis failed to provide proof that he lost good-time credits as a result of the second disciplinary hearing. (Exh. 23.) On December 12, 2009, the Nevada Supreme Court affirmed the dismissal of the petition and later denied rehearing. (Exhs. 26, 28, 29.)

The Clerk received Tellis' federal habeas petition on June 25, 2010. (Dkt. no. 4.) This Court appointed counsel. (Dkt. no. 7.) Now before the Court is respondents' answer to the counseled, second-amended petition (Dkt. no. 40.)

## II.      FEDERAL HABEAS CORPUS STANDARDS

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA limits this Court's ability to grant a writ to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 100  (2011).

However, here, the state district court as well as the Nevada Supreme Court failed to address the merits of Tellis' due process claim (*see* dkt. nos. 40, 43; Exhs. 23,

26, 28). Thus, Tellis' claim is not subject to the deferential AEDPA standard and will be reviewed *de novo*. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

## III.   DUE PROCESS STANDARDS FOR REVOKING GOOD-TIME CREDITS

Prisoners have a protected liberty interest in good time credits received pursuant to NRS 209.4465. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Due process procedures protect against the arbitrary revocation of these good time credits. *Id.* In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court explained:

> Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

418 U.S. at 563-567. The Supreme Court articulated the unique contribution of *Superintendent*:

> Although *Wolff* did not require either judicial review or a specified quantum of evidence to support the factfinder's decision, the Court did note that "the provision for a written record helps to assure that administrators, faced with possible scrutiny by state officials and the public and perhaps even the courts, where fundamental human rights may have been abridged, will act fairly." *Wolff*, 418 U.S. at 565. We now hold that revocation of good time does not comport with "the minimum requirements of procedural due process," *id.* at 558, unless the findings of the prison disciplinary board are supported by some evidence in the record.

*Superintendent*, 472 U.S. at 454 (emphasis added). The Supreme Court went on to classify the evidence in *Superintendent* as "meager" and as only circumstantial, but because there was "some" evidence it was still enough to find that the disciplinary board's decision had some support and was not "otherwise arbitrary." *Id.* at 457.

## IV.   INSTANT PETITION

### A.   Petitioner's Claim

Petitioner asserts a single ground for relief — NDOC personnel violated his Sixth and Fourteenth Amendment due process rights when they refused to allow him to present witnesses and other evidence at his disciplinary hearing. (Dkt. no. 39 at 5-7.) As

a result of the hearing, Tellis was sanctioned with the loss of good-time credits. (*Id.* at 5.)

Tellis alleges the following. On January 18, 2008, he was housed at Nevada State Prison ("NSP"), and a caseworker received an anonymous kite under her office door. (Exh. 2.) The kite accused Tellis of having sexual intercourse with another inmate in the shower the day before and also accused him of having sexual intercourse in the "room" while the window was covered up. (*Id.*)

Associate Warden Watson, the investigating officer, found that Tellis had forced another inmate to have sexual intercourse several times over the past ten months by offering to protect him from other inmates. (*Id.*) At a disciplinary hearing on January 28, 2008, the hearing officer concluded that the allegations were supported by Warden Watson's investigation and found Tellis guilty. (*Id.*) He was sanctioned with 18 months of disciplinary segregation, ordered to pay restitution, and recommended for loss of good-time credits. (Exhs. 2, 5.)

Tellis filed a grievance regarding his hearing and was afforded a new hearing, which took place on March 27, 2008. (Exhs. 4, 6.) Tellis claims that he was not allowed to call witnesses or introduce other documentary evidence at his second disciplinary hearing in violation of his due process rights. (Dkt. no. 39 at 5-7.)

In his reply in support of his petition, Tellis recounts the second disciplinary hearing from the audio recording that respondents provided for this action. (Dkt. no. 43 at 8-11; *see also* dkt. no. 24.) Tellis notes that most of his own brief statements during the hearing are inaudible. (Dkt. no. 43 at 8.) Tellis was permitted substitute counsel, inmate Nathaniel Meeks ("Meeks"). He met with Meeks on March 11, 2008, and asked Meeks to obtain written statements from four inmates. Meeks was also present at the disciplinary hearing.

///

///

///

4

Officer Adolf Stankus ("Stankus") conducted the hearing. He read the Notice of Charges:

> On January 18, 2008, CCS 1, Anita Habberfield approached AWO Watson with an anonymous kite that was placed under her office door. The Kite stated that Tellis, identified later as Lester Tellis 24522 aka Diamond was in D wing taking a shower with the faggot, Shawn Jacobson 92726, on the previous day. The kite went on to allude that Tellis was having sexual intercourse with Jacobson. The kite said that they had also had sex in the room with the door window covered. AWO Watson investigated the claim made by the kite and it was determined that Tellis had forced Shawn Jacobson to have sexual intercourse with him approximately 5 or 6 times over the course of the previous 10 months. Intercourse was sexual assault. Tellis approached Jacobson under the auspice of providing him with protection for having sex with him. Jacobson thought he had no choice but to comply or be raped by another inmate. Both inmates were sent to medical and placed in administrative segregation. Medical conducted blood tests to ascertain if communicable diseases were present in either inmate. Further information was provided *in camera* to the hearing officer.

(*Id.*)

Tellis pled not guilty and made a brief statement. The officer stated for the record that Tellis asked Meeks to get statements from four inmates: Minor, Tribble, Bowyer, and Calvin Tellis (apparently petitioner's brother).

Bowyer provided a written statement:

> I have never observed any activity between the two people mentioned above. As far as I know, Shawn had no problems with Lester Tellis and was always happy to see him. Shawn Jacobson did a lot of cell visiting but I didn't permit any activities of his in my room. As far as the shower rumor, that is what it is, a rumor.

(*Id.* at 9.) Stankus advised Tellis that the other three witnesses had refused to provide statements. Stankus also stated that he personally spoke to Calvin Tellis who stated "Lester (petitioner) didn't do that" but had no further information regarding the allegations. (*Id.*)

Stankus acknowledged that Tellis had requested staff witnesses. Stankus summarized their statements:

> Corrections Officer ("CO") Thompson stated that he was not working on that day (January 17, 2008) and this was verified through the shift roster. CO Thompson further stated that he attempted to keep the wing crossing down but that it is not possible to stop it all.

5

CO Indiveri, who was working that day, stated that he did not permit wing crossing on his shift but that it is not possible to stop it all. He opined that he caught about 99% of the wing crossing.

Stankus' summary of what CO Mattice stated cannot be heard completely due to the quality of the tape.

Coach Love stated that Tellis returned a chess set to him that day but did not recall whether it was in the morning or the afternoon and he could not verify how long Tellis was in the gym.

*Id*. at 9-10.

Stankus did not describe the *in camera* information he reviewed nor identify any other witnesses. Stankus stated that he based his decision on the fact that Tellis' witnesses were not able to support his claims as to what went on that day. Stankus stated that according to "reports" the acts had gone on for about ten months. (*Id*. at 10.)

Stankus found Tellis guilty of all of the charges and imposed 24 months segregation, 60 days loss of phone and canteen privileges, 60 days loss of property and loss of good time credits in Category A. (*Id*.) Tellis appealed the hearing officer's decision. (Exh. 8.) While the decision was upheld and prison officials set the loss of good-time credits at 450 days, the segregation sanction was reduced to the original 18 months that had been imposed at the first disciplinary hearing. (*Id*.)

This Court concludes that Tellis' claims that he was denied the opportunity to call witnesses and present other evidence is clearly belied by the record, as set forth above. The hearing officer specifically presented for the record the written statement of one inmate witness and also stated that he had personally spoken with Tellis' brother. Stankus further noted that three inmates from whom Tellis sought written statements — including Tellis' brother — refused to provide them. With respect to staff witnesses, the hearing officer recounted the statements of four of the staff witnesses that Tellis requested. Notably, inmates' due process rights in disciplinary hearings do not extend to confrontation or cross-examination of witnesses. *Wolff*, 418 U.S. at 567-568.

Finally, the only specific documentary evidence Tellis refers to in either his petition or reply is the results of alleged blood tests. (Dkt. no. 4 at 15.) However, Tellis

stated during the hearing that: "The whole notice of charges is wrong. It said they took us to the infirmary which never happened so that is a lie." (*Id.* at 9.) Thus, Tellis appears to know that no blood tests took place and, therefore, no results exist. Tellis does not identify any other documentary evidence that he was not allowed to introduce.

This Court determines that Tellis has failed to demonstrate that he was not permitted to call witnesses or introduce specific documentary evidence in his disciplinary proceedings in violation of his due process rights. Accordingly, his petition will be denied.

## V.    CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

## VI.    CONCLUSION

It is therefore ordered that the second-amended petition for a writ of habeas corpus (dkt. no. 39) is denied in its entirety.

///

1    It is further ordered that the Clerk shall enter judgment accordingly and close this

2  case.

3    It is further ordered that petitioner is denied a certificate of appealability.

4

5    DATED THIS 29th day of September 2015.

6

7    _____
     MIRANDA M. DU
8    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28